IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| U.S. FOODSERVICE, INC. | * |
| | * |
| v. | * Case No.: 1:09-cv-266 |
| | * |
| TRUCK DRIVERS AND HELPERS LOCAL UNION NO. 335 HEALTH & WELFARE FUND, et al., | * |

MEMORANDUM

Now pending before the court is a Motion for Summary Judgment filed by the Defendant, and Counterclaim Plaintiff Truck Drivers and Helpers Local Union ("the Funds") and a Motion for Summary Judgment filed by the Plaintiff, and Counterclaim Defendant U.S Foodservice, Inc. ("USF"). USF seeks to recover contributions it made to employee health and pension funds that allegedly exceeded the requirements of the relevant collective bargaining agreement ("CBA"). USF argues that the unambiguous language of the collective bargaining agreement supports their claim for restitution. The Funds counterclaim that USF has failed to pay its required contributions since February 2008. The Funds contend that the language is ambiguous and therefore a 20 year course of dealing mandates a decision in their favor. For the reasons that follow, USF's Motion for Summary Judgment is granted and the Funds' Motion for Summary Judgment is denied.

**I. Background**

USF claims that due to "inattention to detail and poor management of the situation" it has made 20 years worth of contributions to employee health and pension funds that were in excess of the amounts required by the CBA. (USF.'s Mem. in Supp. of Summ. J. ("USF.'s Mem.") at 1.) The CBA provides that USF:

> [A]grees to pay into the Fund, three dollars and ninety five cents ($3.95) for each straight time hour or fraction thereof paid to each employee covered by this agreement or by subsequent collective bargaining Agreements between the parties hereto up to but not in excess of fifty (50) straight time hours in any one (1) work week in the case of each employee.

(The Funds' Mem. in Supp. of Summ. J. ("Funds' Mem."), Ex. 19 at 21.) The parties' dispute is limited to the meaning and effect of the term "straight time." Since 1957 each CBA between USF and the Funds has contained the exact usage of the term. (*See* USF.'s Mem. at 6; Funds' Mem., Exs. 2-19.)

USF argues that the language is unambiguous. Employees work two types of hours: "straight time" and "overtime." According to USF, straight time simply means non overtime hours. (USF.'s Mem. at 15-17.) As used in the collective bargaining agreement, "straight time" modifies the succeeding word "hours." (*Id.* at 14.) Therefore the CBA requires contributions only for "straight time" hours worked by an employee, up to 50 hours per week.

For at least 20 years, USF made contributions to the funds in excess of their own interpretation of the CBA. Contributions were made for every hour worked by an employee, up to 50 hours a week, regardless of whether the hour was straight time or overtime. To explain this mistake, USF points to a payroll clerk who worked for USF from 1988 to 2007. Even though she was tasked with calculating the company's monthly contributions, she received no training,

2

nor was she provided with the CBA. (USF.'s Mem. at 7.) Instead she "figured the process out on her own." (*Id.*) After her retirement in 2007, USF's Maryland distribution controller, Janice Pevo reviewed the collective bargaining agreement and concluded that it did not require "that the Company make contributions on overtime or other premium hours paid to employees because contributions were limited to straight time hours." (USF.'s Mem, Ex. D at ¶ 6.) Subsequently, USF commenced the instant action to recover the overpaid funds.

The Funds proffer a different interpretation and therefore contend that "straight time" is ambiguous. According to the Funds, the different pay rates for straight time and overtime precipitated inclusion of the term "straight time" in this section of the CBA. With respect to wages, the CBA provides that employees are entitled to 1.5 times the normal straight time hourly pay rate for hours 41-50. "Straight time," as it relates to employer contributions, ". . . was an attempt by the bargaining parties to make clear that, for hours 41 through 50 of an employee's basic work week . . . the employer was not obligated to pay contributions equal to one and one half times the establish contribution rate." (Funds' Mem. at 12, Ex. 1 at ¶ 15.) Therefore, "straight time" modifies the contribution rate. Under this interpretation, USF is required to make "flat rate" contributions for every hour worked up to 50 hours a week. The Funds argue that because the term "straight time" is susceptible to more than one reasonable interpretation, the Court should consider extrinsic evidence of USF's 20 year history of contributions on all hours worked up to 50 to discern its meaning. (Funds' Mem. at 16.)

**II. Analysis**

**A.**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law of the cause of action determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A question of fact is genuine only where it "may reasonably be resolved in favor of either party." *Id.* at 250. Whether the term "straight time" is reasonably capable of only one construction, or is ambiguous, is a question of law to be decided by the court. *Keffer v. H.K. Porter Co., Inc.,* 872 F.2d 60, 62 (4th Cir. 1989).

As a preliminary matter, ERISA provides employers with a cause of action to recover overpayments. *See Provident Life & Accident Ins. Co. v. Waller,* 906 F.2d 985, 993 (4th Cir. 1990) (a remedy for unjust enrichment "is in accord with the statutory provision in ERISA that allows for the return of mistakenly paid contributions made by employers to multiemployer plan funds"); ERISA § 403(c)(2)(A), 29 U.S.C. § 1103(c)(2)(A). Furthermore, a claim for restitution effectuates the clear intent of USF and the Funds because the relevant trust agreement authorizes the return of contributions made as the result of mistake. (USF's Mem. at 13, Ex. G at 60-61); *see also Provident Life & Accident Ins. Co. v. Cohen*, 423 F.3d 413, 426 (4th Cir. 2005) (recognizing the existence of such a claim in the Fourth Circuit where it furthers the parties' contract).

In determining whether "straight time" is ambiguous, I first look to the parties' intent as expressed in their agreement. *District 29, United Mine Workers v. Royal Coal Co.* 768 F.2d 588, 590 (4th Cir. 1985). Normal rules of contract interpretation are applied more loosely in the context of collective bargaining agreements; however courts will not consider extrinsic evidence that is inconsistent with an unambiguous writing. *Chapman v. ACF Indus. LLC*, 430 F. Supp. 2d 570, 573 (S.D.W.Va. 2006) (citing 20 Williston on Contracts § 55:27 (4th ed.)). A term is

4

ambiguous if it is "susceptible to two reasonable interpretations." *Teamsters Local 391 v. Ball Corp.*, 355 F. Supp. 2d 803, 809 (M.D.N.C. 2005). Although, even the most explicit language "can only be understood in light of the context which gave rise to its inclusion." *Keefer v. H.K. Porter Co., Inc.*, 872 F.2d 60, 62 (4th Cir. 1989) (citing *Int'l Union, United Auto. Aerospace & Agric. Implement Workers v. Yard-Man, Inc.*, 716 F.2d 1476, 1479 (6th Cir. 1983)).

The CBA language is clear and unambiguous. "Straight time" is time that does not include overtime or premiums. *See* WEBSTER'S THIRD INTERNATIONAL DICTIONARY 2254 (Meriam Co. 1966) (defining "straight time" as "[t]he regularly established working time of employees during a standard period (as a week) excluding . . . overtime . . . [or] the rate of pay applicable for straight-time work"); ROBERTS' DICTIONARY OF INDUSTRIAL RELATIONS 407 (BNA Incorporated 1996) (defining "straight time pay" as the rate of pay for hours regularly worked, excluding overtime). Affidavits submitted by the Funds are in accord with this construction. (*See* Funds' Mem., Ex. 21 at ¶ 11 (Deposition of David A White, Secretary-Treasurer of Teamsters Local Union No. 355, indicating that straight time denotes a type of hour, not a rate of pay: "these employers have historically made. . . and continue to make contributions to the Health Fund based on all hours-straight time and overtime-paid to employees, up to the weekly maximum")). Therefore, as written in the CBA, "straight time" modifies the word "hour" such that contributions are required only for the "straight time hours" the employee is paid, and not for overtime hours. *Accord Wells v. Chevy Chase Bank, F.S.B.*, 768 A.2d 630, 630 (Md. 2001) ("The words employed in the contract are to be given their ordinary and usual meaning, in light of the context within which they are employed.").

Usage of the term "straight time" throughout the collective bargaining agreement confirms this construction. For example, Article 4 Section 6 of the CBA provides that

"[w]henever any . . . holidays occur during the work week, overtime for such week shall be paid for after thirty-two (32) hours of straight time have been worked." (Funds' Mem., Ex. 20 at 8.) Throughout the CBA, "straight time" precedes the noun it modifies and is nowhere used to describe a flat rate of pay spanning different type of employment hours. *Cf. Teamsters Industrial Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.* 989 F.2d 132, 136 (3d Cir. 1993) (concluding that the term "each employee" was ambiguous because it had multiple meanings throughout the agreement.) Finally, nothing in the Health Fund trust agreements is contrary. (Funds' Mem. Ex. 7 at 12-13 (requiring contributions "in such amounts and under the terms as are provided for in the applicable Collective Bargaining Agreement.").)

The Funds argue for an alternative construction whereby "straight time" actually means "flat rate." They contend that rather than modify the word "hour," "straight time" modifies the word "pay," such that contributions are required to be made at the same flat rate, regardless of the type of hour worked. For a number of reasons, this construction is untenable. First, the Funds cite no objectively reasonable source for the proposition that "straight time" means "flat rate." *Teamsters Local 391*, 355 F. Supp. 2d at 809 (concluding that ambiguity requires two reasonable interpretations). Second, construing the CBA in the manner sought by the funds, would require reading the term "straight time" out of the agreement altogether:

> . . . agrees to pay into the Fund . . . ($3.95) for each ~~straight time~~ hour or fraction thereof paid to each employee . . . up to 50 ~~straight time~~ hours in any one week."

*See also* (The Fund's Reply Mem. ("Funds' Reply") at 12, Ex 2. at 63, 68 (Health Fund designee's deposition, stating that a "straight time hour" is "an hour paid").) Third, every contribution provision, from 1957 to the present, included a single specific dollar contribution.

6

A contract term indicating that contributions were to be made at a flat rate is redundant. Finally, the term "straight time" is disconnected from the specified rate of pay. Only by deconstructing the clause and rearranging terms could I produce the result the Funds seek. *See DeJarnette v. Federal Kemper Ins. Co.,* 475 A.2d 454, 460 (Md. 1984) (concluding that a strained or unreasonable construction of a contract term cannot be used to make it ambiguous). A "reasonably prudent person" would not perceive the meaning which the Funds advocate, and therefore cannot be the basis for an ambiguity. *See Eaglehead Corp., v. Cambridge Capital Group, Inc.*, 170 F. Supp. 2d 552 (D. Md. 2001).

To support their claim of ambiguity, the Funds also contend that USF's interpretation is unreasonable because it would render the 50 hour per week limitation on contributions meaningless. (Funds' Reply at 28.) According to the Funds, employees will only work more than 40 straight time hours in a week in anomalous situations. (*Id.*) Therefore, no reasonable person would have included a 50 hour contribution limitation. As the Funds note, a 50 hour cap on all hours worked would have a greater exclusionary effect than a 50 hour cap on only straight time hours. (Funds' Reply at 29.) However, a straight time limitation does have a regular effect on contributions, and is therefore not unreasonable or redundant. Excerpts from USF's company payroll records reveal that it is not atypical for employees to be paid for more than 40 or even 50 straight time hours per week.[1] (USF.'s Reply Mem. ("USF.'s Reply") at 7, Ex. A.)

Because the CBA is unambiguous, the clear reading of the language is controlling. The extensive extrinsic evidence offered by the Funds is not properly considered in discerning USF's required contributions. The Fourth Circuit has held:

---

[1] Three general situations result in an employee being paid more than 40 straight time hours per week: 1) when a paid vacation week coincides with a paid holiday; 2) when paid personal leave falls on a week when an employee still works 40 straight time hours by working an extra shift outside their normal schedule; 3) when a paid holiday falls on a Saturday when the employee is not scheduled to work. (*See* Funds' Mem. at 18-20; Ex. 2-3 at 2; Ex. 20 at 2, 8-12.

7

> Because an employer's obligation to a . . . fund is determined by the plain meaning of the language used in the collective bargaining agreement, the actual intent of the contract parties (i.e., the employer and the local union) is immaterial when the language is clear. Consequently, an employer is not permitted to raise defenses that attempt to show that the union and the employer agreed to terms different from those set forth in the agreement.

*Bakery & Confectionary Union & Indust. Int'l Pension Fund v. Ralph's Grocery Co.,* 118 F.3d 1018, 1021 (4th Cir. 1997) (internal quotations omitted). In the instant case, as in *Bakery & Confectionary*, the clear language of the CBA is controlling. The Fund is not permitted to introduce a body of extrinsic evidence in an attempt to show that the parties agreed to terms that conflict with the CBA. *See Clark v. Ryan*, 818 F.2d 1102, 1105 (4th Cir. 1987) ("Because the disputed language is neither ambiguous nor uncertain, the district court's decision to admit parol evidence was error."); *see also Anheuser-Busch, Inc. v. Local Union No. 744,* 280 F.3d 1133, 139-40 (7th Cir. 2002) (rejecting a labor arbitrator's decision to disregard unambiguous contract language in favor of an eight year history of wage payment practices).

**B.**

Even if the language is unambiguous, the Funds argue that because the dispute concerns a CBA, the court should consider the meaning of "straight time" as it is used in other CBAs with other employers. *See, e.g.*, *Keefer*, 872 F.2d at 62 (citing *Transp.-Commuc'n Employees Union v. Union Pacific RR. Co.*, 385 U.S. 157 (1966) (in order to interpret a collective bargaining agreement "it is necessary to consider the scope of other related collective bargaining agreements, as well as practice, usage and custom pertaining to all such agreements")). The Funds argue that there is an "industry practice between Local 355 and all of the employers who

agreed to the term 'straight time hours' . . . whereby they uniformly interpreted that term to mean all hours." (Funds' Mem. at 26; Ex. 1. at ¶ 16; Ex. 21 at ¶ 11.) However, the Funds' affidavits reveal that at least one employer subject to the term "straight time" does not follow the construction advocated by the Funds in the instant case. (USF.'s Mem. Ex. 1 at p. 31-33.) The Funds also have not offered any evidence of an industry wide practice in contributing to health and pension funds, nor industry wide recognition of its definition of "straight time." *See, e.g.*, *Jowett, Inc. v. United States,* 234 F.3d 1365, 1368-69 (Fed. Cir. 2000) (concluding that industry practice can create an ambiguity if a contract terms has an industry meaning different than its ordinary meaning).

### C.

In the alternative, the Funds contend that they are entitled to the defense of laches. Laches bars a plaintiff's claim where the defendant can show "(1) lack of diligence by the party against whom the defenses is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States,* 365 U.S. 265, 282 (1961). A lack of diligence will be found when there is an unreasonable delay in bringing suit after the plaintiff discovers or with reasonable diligence could have discovered the facts giving rise to his cause of action. *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990). A simple reading of unambiguous contract language in 2007, 50 years after it was drafted, precipitated this suit. The delay has been unreasonable. However, the same lack of ambiguity in the CBA precludes a finding of prejudice. Prejudice "is demonstrated by a disadvantage on the part of the defendant in asserting or establishing a claimed right or harm." *Id*. The Funds argue that prejudice stems from their inability to locate and secure the

testimony of individuals present at the contract negotiations in 1957 when the "straight time" language was first drafted. (Funds' Mem. at 31.) However, the inability to locate the original drafters does not prejudice the Funds. When the CBA language is clear and unambiguous "what may or may not have been said during contract negotiations is of no moment. *Trull v. Dayco Prods., LLC*, 214 F.R.D. 394, 400 (W.D.N.C. 2003) (citing *Air Line Pilots Ass'n Int'l v. Midwest Express Airlines, Inc.*, 279 F.3d 553, 557 (7th Cir. 2002) ("negotiating history is just what the parol evidence rule does not allow to be used to vary the terms of a written contract intended to be the final integrated expression of the parties' deal")).

## D.

As a final matter, USF seeks recovery of additional overpayments, which the Funds do not oppose. USF made contributions to the Health and Pension on behalf of employees for the duration of their work-related absence; however the contribution obligation was limited to 52 weeks from the duration of the injury. USF also made contributions on behalf of employees for the duration of their non work-related absence; however, it had no obligation to do so. USF is entitled to a return of these payments.

For the foregoing reasons, USF's Motion for Summary Judgment is granted as to its claims and the Funds' counterclaims. The Funds' Motion for Summary Judgment is denied as to

its counterclaims and the USF's claims. A separate order to that effect is being entered herewith.[2]

DATE: 6/21/2010          \_\_/s/_____
                                J. Frederick Motz
                                United States District Judge

---

[2] The parties have not briefed the issue of the specific amount of overpayment made to the health and pension funds nor have they briefed the issue of pre and post judgment interest. I assume that this is a matter the parties can themselves resolve between them.