IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| U.S. FOODSERVICE, INC., Plaintiff/Counter-Defendant, | * * | |
| v. | * * | Civil No. JFM-09-266 |
| TRUCK DRIVERS AND HELPERS LOCAL UNION NO. 355 HEALTH & WELFARE FUND, ET AL., Defendant/Counter-Plaintiff. | * * * * | |

******

MEMORANDUM

On June 21, 2010, I granted Plaintiff/Counter-Defendant U.S. Foodservice, Inc.'s ("USF's") Motion for Summary Judgment as to its claims against Defendant/Counter-Plaintiff Truck Drivers and Helpers Local Union No. 355 Health & Welfare Fund ("Health Fund") and Defendant/Counter-Plaintiff Truck Drivers and Helpers Local Union No. 355 Retirement Pension Fund ("Pension Fund"). In that memorandum opinion I held that USF is entitled to recover contributions it mistakenly made to the employee Health Fund and Pension Fund (collectively "the Funds") in excess of its required contribution under the relevant collective bargaining agreement ("CBA"). Now pending before this court is USF's Motion for Summary Judgment on the Amount of Restitution. For the reasons that follow, USF's motion is granted.

BACKGROUND

The following facts are uncontroverted. On February 5, 2009, USF filed an action against the Funds, the Funds' board of trustees, and Benefits Administration Corporation ("BAC"), the Funds' third-party administrator. USF sought to recover contributions it made to employee health and pension funds that allegedly exceeded the requirements of the relevant CBA. (Mem. Op. 1, June 21, 2010, ECF No. 34). The Funds answered and filed a counterclaim

1

on April 9, 2009, alleging that USF failed to pay its required contributions since February 2008. (*Id*.). Following the conclusion of discovery, the Funds and USF each filed a motion for summary judgment. (ECF Nos. 23, 27, 30, 32). On June 21, 2010, by memorandum opinion and separate order I granted USF's motion for summary judgment as to its claims and the Funds' counterclaims, and denied the Funds' motion for summary judgment as to its counterclaims and USF's claims. (ECF Nos. 34, 35). I specifically noted that the parties did not brief the issue of the amount of restitution. (Mem. Op. 11 n.2). I assumed that the specific amount could be resolved between the parties (*Id.*); but, my assumption proved incorrect.

USF and the Funds attempted to resolve the issue; the parties reached agreement on certain points, but disagreed on others. (Funds' Opening Br. 3, ECF No. 67). USF and the Pension Fund reached complete agreement as to the proper amount of returnable overpayment—$53,099.15. (Joint Status Report 1, June 16, 2011, ECF No. 61). Thus, there is nothing left open with regard to USF's claims against the Pension Fund. USF and the Health Fund, however, were unable to reach complete agreement. (*Id*.) USF and the Health Fund did reach agreement as to the amount of overpaid contributions made on behalf of employees for the duration of their work-related absences or non-work-related short-term disability absences—$54,376.85. (*Id*.). But, with respect to the contributions made on overtime-paid hours, the parties could not reach an agreement. (Funds' Opening Br. 3–4). Therefore, the only remaining issue before this court is the amount of mistaken contributions on overtime-paid hours USF paid to the Health Fund from January 1, 2006 through March 31, 2008.

## STANDARD OF REVIEW

A motion for summary judgment should be granted only if there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a*); Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). A material fact is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the nonmoving party. *See Emmett*, 532 F.3d at 297. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. Thus, summary judgment is inappropriate if there clearly exists factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250; *see also JKC Holding Co., LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

ANALYSIS

Defendants themselves acknowledge that "neither the Health Fund nor USF asserted the existence of a genuine dispute as to any material fact." (Funds' Opening Br. 2). After granting summary judgment as to liability, the amount of restitution was the only remaining issue. As USF points out, the Health Fund admitted in its response to USF's Motion for Summary Dismissal of Appeal for Lack of Jurisdiction that "there is nothing left for the District Court to do except execute the judgment concerning repayment of mistakenly paid contributions." (USF's Opp'n Funds' Opening Br. Ex. 1 at 7, ECF No. 68-1). In terms of determining the proper amount of mistakenly paid contributions "nothing more is required than payroll records, contributions reports and a calculator–a mere matter of accounting." (*Id.* at 8). Both parties have access to the same undisputed records and information. (USF's Mem. Supp. Mot. Summ. J.

Amt. Restit. 3, ECF No. 66-1). At this point, the only contention between the parties is the proper way to use the records to calculate the amount of overpayment to which USF is entitled.

It appears, however, that the Health Fund is under the impression that more is to be decided at this stage than simply determining the proper overpayment calculation. This impression seems to be based on an erroneous interpretation of the following statement in my summary judgment memorandum opinion: "The parties have not briefed the issue of the specific amount of overpayment made to the health and pension funds . . . I assume that this is a matter the parties can themselves resolve between them." (Mem. Op. 11 n.2; Funds' Opening Br. 2–3). This statement clearly articulates that the case was fully disposed of in terms of liability, and all that remained was the determination of the specific amount of overpayments USF was entitled to recover. Yet, somehow the Health Fund reads my memorandum opinion as "not specifically rul[ing] that USF was entitled to the return of any contributions." (Funds' Opening Br. 2). Not only is such a reading inconsistent with the holding in my memorandum opinion, but it also inconsistent with actions taken by the Health Fund in response to my memorandum opinion. The Health Fund informed this court that it would attempt to agree on the amount of principal owed to USF. (ECF No. 46). This action, in and of itself, acknowledges USF's right to recover its mistakenly paid contributions.

Despite my memorandum opinion granting summary judgment for USF, and despite the Health Fund stating to this court that it would attempt to agree on the proper amount owed to USF, the Health Fund now attempts to re-litigate the merits of USF's claim, arguing that with respect to overtime contributions "no repayment is allowed as a matter of law." (Funds' Opening Br. 4). The Health Fund avers that ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1), prohibits the return of employee contributions unless an exception applies, one of which is ERISA

4

§ 403(c)(2)(A)(ii), 29 U.S.C. § 1103(c)(2)(A)(ii), which the Health Fund reads as permitting—but not requiring—the return of employer contributions where the contributions were made by mistake of fact or law as determined by the plan administrator. (Funds' Opening Br. 4–5). Under its reading of this provision, the Health Fund argues USF did not establish that the requisites for a 403(c)(2)(A)(ii) exception were satisfied. More specifically, the Health Fund avers that because the Health Fund Administrator never made an affirmative determination that USF's contributions were made as the result of a mistake of law or fact, ERISA § 403(c)(2)(A)(ii) bars any restitution. (Funds' Opening Br. 4–8).

The Health Fund presented this theory previously in its summary judgment briefings, (Funds' Mem. Supp. Mot. Summ. J. 31–33, ECF No. 23-1), and I thereafter fully addressed this theory in my June 21, 2010 memorandum opinion, (Mem. Op. 4). I stated:

> As a preliminary matter, ERISA provides employers with a cause of action to recover overpayments. *See Provident Life & Accident Ins. Co. v. Waller,* 906 F.2d 985, 993 (4th Cir. 1990) (a remedy for unjust enrichment "is in accord with the statutory provision in ERISA that allows for the return of mistakenly paid contributions made by employers to multiemployer plan funds"); ERISA § 403(c)(2)(A), 29 U.S.C. § 1103(c)(2)(A). Furthermore, a claim for restitution effectuates the clear intent of USF and the Funds because the relevant trust agreement authorizes the return of contributions made as the result of mistake. (USF's Mem. at 13, Ex. G at 60-61); *see also Provident Life & Accident Ins. Co. v. Cohen*, 423 F.3d 413, 426 (4th Cir. 2005) (recognizing the existence of such a claim in the Fourth Circuit where it furthers the parties' contract).

(Mem. Op. 4). Arguing this theory again at this point is irrelevant to the restitution determination, the only remaining issue in this litigation. Furthermore, I cannot treat the Funds' Opening Brief as request for reconsideration because it is untimely. Pursuant to Local Rule 105.10, "any motion to reconsider any order issued by the court shall be filed with the Clerk not later than fourteen (14) days after entry of that order." *See Crouch v. City of Hyattsville, Md*, No. 09-2544, 2010 WL 4868100, at *2-3 (D. Md. Nov. 23, 2010). I entered the order granting

summary judgment for USF on June 21, 2010. The Funds filed their Opening Brief Regarding Return of Employer Contributions more than a year later on August 26, 2011. Therefore, I disregard the Health Funds' attempts to re-litigate USF's claim.

After disregarding the Health Fund's arguments relating to USF's claim for restitution, there still remains the issue of calculating the specific amount of overtime-hours contribution to which USF is entitled. The Health Fund contends that the correct amount of mistaken contributions is $538,836.08. (Funds' Resp. Br. 16). Essentially, the Health Fund arrived at that figure by totaling the number of hours for which contributions were paid on hours 41 to 50 and multiplying that total by the contribution established in the CBA for the applicable period. (*Id*. at 16-18). USF contends the amount of restitution from the Health Fund for mistaken overpayments on overtime hours is $858,135.35. (USF Mot. Summ. J. Amt. Restit. 1, ECF No. 66). USF reached this number by calculating the difference between what USF should have paid into the Health Fund for the period in question from the amount USF actually paid. (Mem. Supp. USF Mot. Summ. J. Amt. Restit. 1) To determine what USF should have paid USF calculated the total number of straight time hours paid for the period at issue. (*Id*. at 3). The straight time hours paid included vacation time, personal time, sick time, jury duty, holiday pay, light duty, funeral pay, military pay, and bank and other days for which employees received pay at the regular rate. *(Id*. at 3). For each individual employee, the total number of straight time hours was capped at 50 for each week. (*Id*.). Monthly totals were then calculated by combining the straight time hours, up to 50 per week, of all employees. That number was then multiplied by the applicable Health Fund contribution rate set forth in the relevant collective bargaining agreement. (*Id*. at 5). Finally, USF subtracted this amount from the amount USF actually paid

each month and totaled the monthly differences to achieve the total amount of mistaken overpayment for the three year period at issue—$858,135.35. (*Id*. at 6–8).

For several reasons I find USF's formula superior to the Health Fund's. In accordance with my memorandum opinion granting summary judgment for USF, any amount in excess of that obligated to the Health Fund under the terms of the collective bargaining agreement should be returned to USF. *See Peterson v. Int'l Paper Co.*, 2009 WL 3379922 (Oct. 20, 2009) (E.D.N.C. 2009) at *20 (stating that "to ensure the fair and accurate calculation of overpayments" in the ERISA context, the amount of restitution sought "should be based on *actual* amounts paid") (emphasis retained). USF's methodology for determining the amount of recoverable contributions involves a simple, straightforward calculation of the difference between the amount paid and amount owed. Conversely, the Health Fund's calculation is unnecessarily complicated and relies on an erroneous interpretation of the CBA and my memorandum opinion.

The Health Fund contends that the CBA requires USF to make contributions to the Health Fund on overtime hours earned during hours one through forty in a workweek. (Funds' Resp. Br. 22). In connection with their contention, the Health Fund does not include contributions made on an employee's overtime hours if that employee did not work over 40 hours that week. The CBA, however, provides for payment of overtime to employees in a number of situations, not solely when an employee complete more than 40 hours in a workweek. (USF's Opp. Funds' Resp. Br. 2). In my memorandum opinion I held that "as written in the CBA, 'straight time' modifies the word 'hour' such that contributions are required only for the 'straight time hours' the employee is paid, and not for overtime hours." (Mem. Op. 5). USF is therefore correct that "[t]he Health Fund's formula relies on a faulty premise because it fails to

take into consideration the very language of the [CBA] that was at issue in the case." (USF Opp. Funds' Resp. 2).  The Health Fund's calculation improperly assumes that all hours paid from 0 to 40 hours in a workweek are straight time hours and all hours over 40 are overtime hours. (*Id*. at 3). Thus, the Health Fund's formula is under-inclusive, only accounting for overtime hours paid in connection with hours 41 to 50 and does not account for contributions made on overtime hours paid in connection with hours below 40. (*Id*.).  I therefore adopt USF's calculation and award restitution for overtime contributions in the amount requested.

      For the reasons discussed above, Plaintiff USF's Motion for Summary Judgment on the Amount of Restitution is granted and judgment entered in favor of the plaintiff in the amount of $858,135.35.  A separate order to that effect is being entered herewith.


December 23, 2011                                                /s/
Date                                                          J. Frederick Motz
                                                              United States District Judge